IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DORIS L. PERKINS

    v.              :   Civil Action No. DKC 11-0660

KAISER FOUNDATION HEALTH PLAN
OF THE MID-ATLANTIC STATES, INC.:

## MEMORANDUM OPINION

Presently pending and ready for resolution in this employment discrimination case is a motion to dismiss or for summary judgment filed by Defendant Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc. ("Kaiser"). (ECF No. 31). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's motion will be granted.

## I.  Background

### A.  Factual Background

Plaintiff Doris Perkins, an African-American female, began working for Kaiser in November 2003 as a staff pharmacist at its Largo, Maryland branch. Plaintiff remained in that position until she was terminated in July 2008. When she started at Kaiser, Plaintiff was employed as an on-call ambulatory care pharmacist. (ECF No. 31-3, at 3, Perkins Dep.). She became a full-time ambulatory pharmacist in March 2004. (*Id.* at 4). Kaiser has a defined chain of command in the pharmacy. Each

pharmacist reports to a lead pharmacist or assistant pharmacy supervisor, and this assistant supervisor reports to the pharmacy supervisor. (*Id.* at 5-8). Technicians, who are below the pharmacists, ring up customers' orders. (*Id.*).

In mid-2007, Franklin Olagbaju, an African-born male, was hired as the pharmacy supervisor. (*Id.* at 9-10). Prior to Olagbaju's hiring, the pharmacy had been without a supervisor for some time. (*Id.*). In August 2007, Karen Smithe became the assistant pharmacy supervisor. (*Id.* at 14).

In November 2007, Plaintiff was issued a warning by Olagbaju for failing to act appropriately on November 5, 2007. (*Id.* at 17-18). A customer had come to the pharmacy counter and repeatedly asked whether her prescription was ready. A technician asked if her name was on the electronic board that displayed when her order would be ready. (*Id.* at 19-20). The discussion between the technician and the customer became heated, and the customer asked for a supervisor. (*Id.*). Olagbaju took control of the situation and reprimanded Plaintiff, as the technician's supervisor, for failing to handle the situation appropriately before it escalated. (*Id.* at 22).

On November 8, 2007, Smithe approached Plaintiff to discuss her unwillingness to answer ringing phones in the pharmacy that day. When Smithe attempted to talk to Plaintiff about the

situation, Plaintiff told Smithe, "I know my job. I don't need anyone to tell me how to do my job." (*Id.* at 23). Olagbaju reprimanded Plaintiff for her conduct toward Smithe. His warning stated that her response was abrupt and her tone of voice was aggressive and disrespectful. (*Id.* at 23). In her deposition, Plaintiff admitted that her response to Smithe was short, curt and inappropriate. (*Id.* at 26-28).

On March 31, 2008, Olagbaju issued another warning to Plaintiff, writing that she did not change a prescription label when asked to do so by a technician. (*Id.* at 29).

On April 15, 2008, Olagbaju issued a written warning and performance improvement plan to Plaintiff. (*Id.* at 52). The warning required that Plaintiff improve her performance as a team player and improve her communication skills by interacting with courtesy. (*Id.*). The performance improvement plan required Olagbaju and Plaintiff to meet on a biweekly basis to evaluate her improvement. On April 23, Plaintiff reported to Olagbaju's manager that he was discriminating against Plaintiff on the basis of her national origin. (ECF No. 34-1, at 4, Ex. 1 Perkins Decl. ¶ 12).

On May 15, 2008, Plaintiff delayed in refilling a machine that automatically counted pills, causing a delay in processing prescriptions. (ECF No. 31-3, Perkins Dep., at 31). When asked why she had delayed in refilling the machine, Plaintiff asked

Smithe why someone else couldn't do it. (*Id*. at 37). Olagbaju gave Plaintiff a final written warning on May 28, 2008. (*Id*.).

On June 2, 2008, Plaintiff again complained of discrimination by writing to the human resources department to report Olagbaju's treatment of her. (ECF No. 34-1, at 4, Ex. 1 Perkins Decl. ¶ 14). On June 23, 2008, Plaintiff failed to counsel a customer until specifically asked by Olagbaju. (ECF No. 31-3, at 58 Perkins Dep.). After this incident, Kaiser Permanente discharged Plaintiff on July 25, 2008. In his letter of termination, Olagbaju memorialized Plaintiff's performance issues. (*Id*.).

On November 3, 2008, Plaintiff filed a Charge of Discrimination with the Maryland Commission on Human Rights ("MCHR") alleging age discrimination and retaliation, and cross-filed the charge with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* at 59, Perkins Dep. Ex. 33). In that charge, Plaintiff alleged that Olagbaju discriminated against her on the basis of her age when he disciplined her for the November 8, 2007, April 25, 2008, and May 28, 2008 incidents, and retaliated against her based on her June 2008 complaint to HR. (*Id.*). Plaintiff states that on the intake questionnaire associated with her original complaint, she initially checked many boxes, including that of national origin discrimination, but that she was advised to limit her claims to

4

one theory of discrimination, which is what she did, choosing only age discrimination. (ECF No. 34-1, at 25; ECF No. 34-1, at 4, Perkins Decl. ¶ 17). On July 7, 2009, Plaintiff filed an amended administrative complaint with the EEOC, alleging the same facts and adding a claim of national origin discrimination. (ECF No. 34-1, at 32, Ex. 7).

On December 12, 2008, Plaintiff filed her first complaint in this court. (*Perkins v. Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.*, No. 08-cv-3340). She subsequently filed an amended complaint, alleging: i) national origin discrimination; ii) hostile work environment; and iii) retaliation; in violation both of Title VII and 42 U.S.C. § 1981; and iv) breach of contract. (*Id.* at ECF No. 20).

On March 3, 2010, Plaintiff's Title VII claims were dismissed for failure to exhaust her administrative remedies, because she filed suit before receiving a right-to-sue letter from the EEOC. (*Id.* at ECF No. 52). Her national origin-based discrimination claims brought under 42 U.S.C. § 1981 were dismissed because that statute does not provide redress for national origin discrimination. (*Id.*). Summary judgment was granted in Kaiser's favor on Plaintiff's retaliation claim under § 1981, because Plaintiff failed to demonstrate that her discharge was not based on the non-discriminatory reasons that

Kaiser articulated. (*Id.*). Summary judgment was also granted in Kaiser's favor on her breach of contract claim. (*Id.*).

**B.  Procedural Background**

On March 11, 2011, Plaintiff filed, *pro se*, a second complaint in this court, alleging discrimination based on race, age, and national origin, in violation of Title VII. (ECF No. 1). On June 10, 2011, Defendant answered. (ECF No. 10). Defendant filed a motion for summary judgment or to dismiss for lack of subject matter jurisdiction on December 13, 2012. (ECF No. 31). Plaintiff filed her opposition on January 2, 2013 (ECF No. 34), and Defendant replied on January 22 (ECF No. 35).

**II.  Standard of Review**

Summary judgment may be entered only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts

showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)).  "A mere scintilla of proof . . . will not suffice to prevent summary judgment."  *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).   "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted).  At the same time, the facts that are presented must be construed in the light most favorable to the party opposing the motion.  *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

## III. Analysis

Plaintiff's complaint alleges Title VII claims for disparate treatment based on race, age, and national origin discrimination, and retaliation.  Defendant argues that all claims are barred by either the doctrine of *res judicata* or collateral estoppel; that Plaintiff's amended EEOC charge is untimely; and that all claims fail on the merits.  Plaintiff, in turn, contends that she timely exhausted her administrative remedies for her national origin and retaliation claims, and that summary judgment on those claims is inappropriate.  She does not address Defendant's arguments regarding her claims of age and race discrimination.

## A.  Age and Race Discrimination Claims

In her complaint, Plaintiff raises claims of age and race discrimination.  In her opposition to Defendant's motion, however, Plaintiff does not discuss these claims. (*See* ECF No. 34).  "A plaintiff's failure to respond to a summary judgment motion may constitute a waiver or abandonment of a claim." *Estate of Edgerton v. UPI Holdings, Inc.*, No. CCB-09-1825, 2011 WL 6837560, at *4 (D.Md. Dec. 28, 2011) (citing *Mentch v. E. Sav. Bank, FSB*, 949 F.Supp. 1236, 1246-47 (D.Md. 1997) (finding that the plaintiff "abandoned her harassment claim by failing to address that claim in her opposition to [defendant's] motion for summary judgment, or to offer clarification in response to [defendant's] reply brief," even when the facts supported the abandoned claim)).  Accordingly, Plaintiff has abandoned her race and age discrimination claims, and summary judgment in Defendant's favor is appropriate on those claims.

## B.  Doctrine of *Res Judicata*

Under the doctrine of *res judicata*, also known as claim preclusion, a party may not seek to litigate, in a new action, claims that were or could have been raised in an earlier action between the parties or their privies that was resolved on the merits:

> Under the doctrine of res judicata, "a final judgment on the merits bars further claims by parties or their privies based on the

> same cause of action." *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). . . . "To establish a res judicata defense, a party must establish: (1) a final judgment on the merits in a prior suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits." *Jones v. SEC*, 115 F.3d 1173, 1178 (4th Cir. 1997) (internal quotation marks omitted), *cert. denied*, 523 U.S. 1072 (1998).

*Andrews v. Daw*, 201 F.3d 521, 524 (4th Cir. 2000).

## 1. Retaliation Claim

In Plaintiff's prior suit, summary judgment on her retaliation claim was granted under 42 U.S.C. § 1981 on a theory of racial discrimination, not under Title VII, the statute under which she brings her current national origin discrimination claim. Defendant argues that Plaintiff is precluded from relitigating her claim of retaliation because the claim is barred by the doctrines of *res judicata* and collateral estoppel. Plaintiff contends that the claim is not barred because the causes of action are not the same. There is no dispute that all other elements of the doctrine of *res judicata* are met here.

The United States Court of Appeals for the Fourth Circuit has held that "[t]he test for deciding whether the causes of action are identical for claim preclusion purposes is whether the claim presented in the new litigation arises out of the same transaction or series of transactions as the claim resolved by

the prior judgment." *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 162 (4th Cir. 2008) (quoting *Pittston Co. v. United States*, 199 F.3d 694, 704 (4th Cir. 1999) (internal marks omitted). An action is substantially the same as a prior action when it seeks the same relief and implicates the same set of material facts. *See Adkins v. Allstate Insurance Co.*, 729 F.2d 974, 976 (4th Cir. 1984). The court has further held that "two suits constitute the same cause of action if they rely on the same facts, even though the legal theories on which recovery is based or the remedies sought are different." *Kutzik v. Young*, 730 F.2d 149, 152 (4th Cir. 1984) (citing *Mettee v. Boone*, 251 Md. 332, 341 (1968); *see also Pueschel v. United States*, 369 F.3d 345, 355 (4th Cir. 2004) ("Were we to focus on the claims asserted in each suit, we would allow parties to frustrate the goals of *res judicata* through artful pleading and claim splitting given that '[a] single cause of action can manifest itself into an outpouring of different claims, based variously on federal statutes, state statutes, and the common law'") (quoting *Kale v. Combined Ins. Co. of Am.*, 924 F.2d 1161, 1166 (1st Cir. 1991)) .

In Plaintiff's prior suit, this court granted summary judgment for Defendant on Plaintiff's retaliation claim and found that Plaintiff failed to demonstrate that Kaiser's

nondiscriminatory explanation for her dismissal was the result
of pretext:

> Despite the fact that the discharge was
> relatively close in time to Plaintiff's
> complaints to the human resources
> department, the problems which prompted her
> discharge had been ongoing for some time,
> and the severity of the actions taken by
> Defendant did not rise or fall based on her
> letters [to HR alleging discrimination at
> the hand of Mr. Olagbaju]. The discharge on
> July 25, 2008 was the outcome of a series of
> warnings and meetings that had taken place
> over the previous month. It was not the
> result of retaliation by Defendant.

(*Perkins v. Kaiser Foundation Health Plan of the Mid-Atlantic
States, Inc.*, No. 08-cv-3340, ECF No. 52, at 17). Here,
Plaintiff's retaliation claim arises from exactly the same
conduct that was considered by this court in *Perkins v. Kaiser
Foundation Health Plan of the Mid-Atlantic States, Inc.*, No. 08-
cv-3340. Therefore, Plaintiff is precluded from relitigating
this claim because the causes of action are the same,
notwithstanding the fact that national origin discrimination
under Title VII and race discrimination under 42 U.S.C. § 1981
are distinct legal theories. Accordingly, summary judgment is
appropriate in Defendant's favor on this claim.

### 2. National Origin Discrimination Claim

Plaintiff argues that Olagbaju disciplined her during the
course of her employment because she is an African-American
female, and he treated her more harshly than he did treated

African-born staff pharmacists.  (ECF No. 34-1, at 3, Ex. 1, Perkins Decl. ¶ 7).  In Plaintiff's original suit against Kaiser, her national origin discrimination claim was dismissed for lack of subject matter jurisdiction for failure to exhaust her administrative remedies.  Plaintiff argues that a grant of summary judgment in Defendant's favor on the basis of the doctrine of *res judicata* or collateral estoppel is inappropriate because the claim was not previously decided on the merits.

It is not clear whether dismissal for failure to satisfy administrative exhaustion requirements would be a sufficient basis on which to establish claim preclusion, although *Stebbins v. Nationwide Mutual Insurance Co.*, 528 F.2d 934 (4th Cir. 1976), may support that result here.  There, the Fourth Circuit affirmed dismissal of Plaintiff's complaint only on the procedural ground that the plaintiff had not timely filed his suit after receiving a right-to-sue notice from the EEOC.  *Id.* at 936.  The plaintiff received another right-to-sue notice and filed a second action against the same defendant involving the same claim of racial discrimination.  The Fourth Circuit found that *res judicata* precluded the second action, although the first action had not resulted in a judgment on the merits.  *Id.* at 937; *cf. Kratville v. Runyon*, 90 F.3d 195, 198 (7th Cir. 1996) (noting that "[a] decision by a federal court that . . . an administrative deadline bars an action is a decision on the

merits for the purposes of claim preclusion"). The Fourth Circuit has clarified its holding in *Stebbins*, however, and noted that its application of the doctrine of *res judicata* in that case was guided by the fact that *Stebbins* "involved a serial litigant who had made a 'career' out of suing insurance companies and had previously exhibited an 'intentional, willful, and contemptuous disregard of both Court and statutory rules and requirements.'" *McCray v. Pee Dee Reg'l Transp. Auth.*, 263 F.App'x 301, 304-05 (4th Cir. 2008) (quoting *Stebbins*, 528 F.2d at 937 & n.4). Furthermore, in *Stebbins*, the defendant had been "prepared to litigate the merits of the first suit and had in fact participated in a 'full-blown trial' as to the substance of the plaintiff's claims." *Id.* Such factors do not appear to be present here, and application of the doctrine of *res judicata* is not appropriate here. Accordingly, Defendant's alternative arguments must be reached.

### C.  Doctrine of Collateral Estoppel

Defendant also argues that the doctrine of collateral estoppel prevents Plaintiff from relitigating her disparate treatment claim based on national origin discrimination. Collateral estoppel "forecloses the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [collateral estoppel] is

asserted had a full and fair opportunity to litigate." *Sedlack v. Braswell Servs. Group, Inc.*, 134 F.3d 219, 224 (4th Cir. 1998) (internal quotation marks and citation omitted). The elements that must be fulfilled for collateral estoppel to bar an issue or fact are as follows:

> To apply collateral estoppel or issue preclusion to an issue or fact, the proponent must demonstrate that (1) the issue or fact is identical to the one previously litigated; (2) the issue or fact was actually resolved in the prior proceeding; (3) the issue or fact was critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding.

*In re Microsoft Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004). The doctrine of collateral estoppel "is a judge-made rule, capable of flexible interpretation to serve the interests of judicial economy by preserving needless relitigation. This flexibility is constantly limited by the overriding principle that the courts should protect a litigant's right to a full and fair opportunity to litigate his claims." *Ritter v. Mount St. Mary's Coll.*, 814 F.2d 986, 994 (4th Cir. 1987).

Here, as in *Ritter*, defensive collateral estoppel would apply to bar the court's consideration of issues that involve "the same parties, the same issues, the same facts, and even the

same court." *Id.* As noted above, identical facts underlie Plaintiff's claims in both this case and her prior case in this court. The only factual question that this court decided in Plaintiff's prior litigation, however, related to whether Plaintiff was fired in retaliation for her complaints to HR of discrimination suffered at the hands of Olagbaju. The court did not decide whether Olagbaju's ongoing discipline of Plaintiff was done because of discriminatory animus based on Plaintiff not being an African-born staff pharmacist. Accordingly, the merits of Plaintiff's disparate treatment claim based on national origin discrimination must be reached.

### D. Plaintiff's Amended Charge[1]

Considering Plaintiff's national origin discrimination claim on the merits, Defendant contends that Plaintiff's amended EEOC charge exceeded the filing time allowed by Title VII and consequently, her national origin claim must be dismissed.

---

[1] Defendant argues that Plaintiff's claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1), because she failed to exhaust her administrative remedies in a timely manner. Yet, "the untimeliness of an administrative charge does not affect federal jurisdiction over a Title VII claim." *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 & n.2 (4th Cir. 2009) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) (the requirement that a plaintiff timely exhaust administrative remedies is "a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling")). Accordingly, this argument is properly considered under the summary judgment standard.

Under Title VII, an employee has 180 days from the employer's alleged discrimination to file a charge with the EEOC. *See* 42 U.S.C. § 2000e-5. In a deferral state such as Maryland, an employee has 300 days in which to file a charge with the EEOC.[2]

It is undisputed that Plaintiff's employment was terminated on July 25, 2008, also the last date of alleged discrimination. There is also no dispute that, in her initial charge, Plaintiff only checked the boxes indicating age discrimination and retaliation.[3] Plaintiff did not file her amended charge until July 7, 2009. In order to fall within the 300 day window required by Title VII, the amended charge needed to have been filed by May 24, 2009. Thus, Plaintiff's national origin discrimination claim was filed after the 300 day time limit.

Plaintiff maintains, without support, that the national origin claim is timely because it relates back to the date of her original filing of her age discrimination charge. A charge

---

[2] A deferral state has "a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof." 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(2). In Maryland, the MCHR constitutes a state agency that is capable of providing relief from discrimination.

[3] Plaintiff states that on the intake questionnaire she initially checked many boxes, including that of national origin discrimination, but that she was advised to limit her claims to one theory of discrimination, which is what she did, choosing only age discrimination. (ECF No. 34-1, at 25; ECF No. 34-1, at 4, Perkins Decl. ¶ 17).

may be amended to "cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations, or to allege additional unlawful acts related to or growing out of the subject matter of the original charge." 29 C.F.R. § 1601.12(b). "Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received." *Id.*

Defendant argues that Plaintiff's national origin discrimination claim in the amended charge alleges a new theory of recovery and therefore does not relate back to the age discrimination claim in the original charge. Defendant argues that *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954 (4th Cir. 1996) controls. *Evans* holds that an amended EEOC charge will not relate back to the original charge when the theories of recovery alleged in the amendment arises from a distinct statutory scheme of the theory alleged in the original charge. *Id.* at 963. Plaintiff's age-based discrimination claim arises under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, and her national origin discrimination claim arises under Title VII. Accordingly, Defendant argues that because they arise under distinct statutory schemes, the claims do not

relate to one another, and Plaintiff's national origin discrimination claim is untimely.

Plaintiff cites 29 C.F.R. § 1601.12(b), and argues that the language "clarif[ies] and amplif[ies] allegations" encompasses precisely the type of amendment that she makes to her EEOC charge. The Fourth Circuit has noted that in the context of an EEOC investigation, this regulation can encompass amended charges in which "the charging party makes no new factual allegations but rather solely revises his or her charge to allege that the same facts constitute a violation of a different statute." *EEOC v. Randstand*, 685 F.3d 433, 444 (4th Cir. 2012).

Plaintiff's EEOC intake questionnaire (ECF No. 34-1, at 25 through 29) and original EEOC charge (ECF No. 31-3, at 59) allege no facts to support a claim of discrimination based on Plaintiff's national origin. Rather, the allegations contained therein only support an inference of age-based discrimination. For example, Plaintiff's original EEOC charge notes that two younger employees, both age 30, were "treated more favorably than me with respect to discipline." (ECF No. 31-3, at 59). There is no mention of national origin-based disparate treatment. To support her national origin-based discrimination claim, Plaintiff would need to allege entirely separate facts that are not included in the papers she originally filed with the EEOC. Because Plaintiff's amended charge raises new facts

under a separate statutory scheme, it does not relate back to her original EEOC charge. Plaintiff's national origin discrimination claim is therefore time-barred because her amended charge was filed after the 300 day time limit.

### E. Equitable Tolling

Plaintiff argues that Title VII's 300-day timing requirement should be equitably tolled because the EEOC advised her to omit national origin discrimination from her intake questionnaire. Such relief is available to a plaintiff who "(1) diligently pursued h[er] claim; (2) was misinformed or misled by the administrative agency responsible for processing h[er] charge; (3) relied in fact on the misinformation or misrepresentations of that agency, causing h[er] to fail to exhaust his administrative remedies; and (4) was acting *pro se* at the time." *Walton v. Guidant Sales Corp.*, 417 F.Supp.2d 719, 721 (D.Md. 2006). Plaintiff's intake questionnaire undermines her argument. On the questionnaire, Plaintiff notes that she consulted Jerome Clair, the attorney who represented Plaintiff in her first case, two days prior to filing the intake questionnaire. (ECF No. 34-1, at 28). Therefore, Plaintiff has not established that she was acting *pro se* at the time she was allegedly misled by the EEOC. Furthermore, it is not clear that Plaintiff diligently pursued her claim. The complaint that Plaintiff filed in her first case alleged national origin-based

discrimination. (*Perkins v. Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.*, No. 08-cv-3340, ECF No. 1). Plaintiff filed that complaint on December 12, 2008, well within the 300-day window. Plaintiff was therefore aware that she desired to pursue a claim for national origin discrimination, but delayed the filing of her amended charge for an additional seven months. Given the circumstances, Plaintiff did not act diligently to amend her charge. Accordingly, the 300-day filing requirement will not be equitably tolled.

**F.    Plaintiff Fails to Establish a *Prima Facie* Case of National Origin Discrimination**

Even if Plaintiff timely exhausted her administrative remedies, her national origin-based disparate treatment claim fails on its merits. Plaintiff provides no direct evidence of discrimination for her national origin claim. Therefore, Plaintiff must rely on the three-part framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell Douglas*, Plaintiff must first demonstrate a *prima facie* case of discrimination. Once a plaintiff establishes a *prima facie* disparate treatment case, the burden then shifts to the employer to provide some legitimate, non-discriminatory reason for the disputed action. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004). If the employer can do so, the burden shifts back to the employee, who

must demonstrate that the reason offered is, in fact, a pretext for discrimination. *Id.* In the end, "[t]he plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against her." *Evans*, 80 F.3d at 959.

To establish a *prima facie* case of employment discrimination based on national origin, Plaintiff must show that: (1) she is a member of a protected class; (2) her job performance was satisfactory; (3) she was subjected to an adverse employment action; and (4) similarly situated employees outside of her class received more favorable treatment. *Texas Dept. of Cnty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

Plaintiff cannot make a *prima facie* case of discrimination regarding this claim because she offers no evidence that gives rise to an inference of discrimination. She offers no evidence to support her conclusion that other similarly-situated African-born or non-American staff pharmacists were treated more favorably either by Mr. Olagbaju specifically or by Kaiser more generally. She fails even to identify or otherwise demonstrate that any African-born or non-American staff pharmacists ever worked for Defendant. Accordingly, summary judgment on Plaintiff's national origin claim in Defendant's favor is warranted.

## IV. Conclusion

For the foregoing reasons, the motion to dismiss or for summary judgment filed by Defendant Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc. will be granted. A separate Order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
